**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CANDY S. ORNER,                    :          CIVIL ACTION NO. **4:CV-13-0837**
                                   :
          Plaintiff               :
                                   :          (Judge Brann)
          v.                       :
                                   :          (Magistrate Judge Blewitt)
NATIONAL BEEF PACKAGING,           :
COMPANY, LLC,                      :
                                   :
                                   :
          Defendant               :

**REPORT AND RECOMMENDATION**

**I.       PROCEDURAL BACKGROUND.**

On April 2, 2013, Plaintiff, Candy S. Ornder, filed, through counsel, a Complaint against

Defendant National Beef Packaging Company, LLC, stating that it was for "Discrimination and

Failure to Provide Reasonable Accommodation Pursuant to the  American with Disabilities Act."

(Doc. 1). Thus, Plaintiff's cause of action is under the American with Disabilities Act of 1990, as

amended ("ADA"), 42 U.S.C. § 12101, *et seq.*   Plaintiff avers that she is disabled for purposes of

the ADA, that Defendant was aware of her disability, and that Defendant repeatedly denied her

requests for reasonable accommodation to return to work as a Tray Packer.   Defendant filed its

Answer to Plaintiff's Complaint on June 3, 2013.   (Doc. 6).   Discovery then ensued and we

extended the discovery deadline.

This Court has jurisdiction over Plaintiff's claim under the ADA pursuant to 28 U.S.C. §1331.

*See Bielich v. Johnson & Johnson, Inc.*, –F.Supp.2d–, 2014 WL 1117939, *1 (W.D.Pa. March 20,

2014).

On April 14, 2014, Defendant filed a Motion for Summary Judgment.  **(Doc. 26)**. Defendant also filed a Statement of Material Facts ("SMF") with Exhibits.  (Docs. 26-2 & 26-3 to 26-20).  Also, on April 14, 2014, Defendant filed its support brief with four Exhibits under seal.  (Docs. 27 to 31).

On May 5, 2014, Plaintiff filed her opposition brief to Defendant's Motion for Summary Judgment as well as her Answer to Defendant's SMF with Exhibits.  (Docs. 35 & 36-1 to 36-13). Plaintiff also filed her medical records under seal. (Docs. 38 & 38-1).

On May 30, 2014, Defendant filed a reply brief with respect to its Motion for Summary Judgment with an Attachment, namely, a May 29, 2014 Declaration of Defendant's engineer expert witness, Jeffrey E. Fernandez, PhD., PE, CPE, verifying the facts and opinions in his April 14, 2014 Expert Report.  (Docs. 46 & 46-1).   Dr. Fernandez's April 14, 2014 Expert Report is found at Doc. 26-4, pp. 10 - 72.  After granting Plaintiff leave of court to file a sur-reply brief, Plaintiff filed her sur-reply brief in opposition to Defendant's Motion for Summary on June 19, 2014.  (Doc. 50).  Plaintiff also filed her Supplemental Statement of Material Facts with Exhibits.  (Docs. 51 & 51-2 to 51-5). Both parties also attached unpublished opinions to their respective briefs.

On May 30, 2014, Defendant also filed a Motion to Strike two (2) Exhibits filed by Plaintiff in her opposition to Defendant's Motion for Summary, namely, Doc. 36, Ex. C, the Expert Report of Daniel Rappucci on behalf of Plaintiff, and the Expert Report of Dr. Jon Glass, neurologist,  on behalf of Plaintiff, Doc. 36, Ex. I.  **(Doc. 44).**   Further, on May 30, 2014, Defendant filed its brief in support of its Motion to Strike with two Exhibits, namely, the Affidavit of Diane Peifer, Human Resource Manager for Defendant, and the May 29, 2014 Declaration of Dr. Fernandez  verifying

the facts and opinions in his April 14, 2014 Expert Report submitted on behalf of Defendant. (Docs. 45 & 45-1 & 45-2).  On June 12, 2014, Plaintiff filed her opposition brief to Defendant's Motion to Strike with an Exhibit, a May 15, 2014 Supplemental Report of Dr. Jon Glass stating, in part, the documents he reviewed, including the Dr. Fernandez's Report.  (Doc. 49 & 49-1).   On June 26, 2014, Defendant filed its reply brief in support of its Motion to Strike. (Doc. 53).

Presently, Defendant's **Doc. 26** Motion for Summary and Defendant's **Doc. 44** Motion to Strike are ripe for disposition.

We now issue this Report and Recommendation only with respect to Defendant's **Doc. 44** Motion to Strike.[1]   Based on our discussion below, we find that Defendant's Motion to Strike Rappucci's Expert Report should be granted, in part, and denied, in part.  We find that Defendant's Motion to Strike Dr. Jon Glass's Expert Report should be denied.  While Defendant's Motion to Strike may not necessarily be a dispositive motion, we nonetheless issue a Report and Recommendation since we believe the Court's resolution of this Motion will significantly impact the Court's decision with respect to Defendant's pending Motion for Summary Judgment and whether material issues of fact exist with respect to all aspects of Plaintiff's claim under the ADA against Defendant.  We find that the Expert Reports  submitted by Plaintiff may very well support Plaintiff's contention that there are disputed issues of material fact which should be resolved by the jury. Thus, we find that Defendant's Motion to Strike must first be resolved and, a determination made by the Court as to whether Rappucci's and  Dr. Glass' Expert Reports should be considered as part of the record before Defendant's Motion for Summary Judgment can be decided.  As such,

---

[1]We have been assigned this case for pre-trial matters.

we will not issue our Report and Recommendation regarding Defendant's pending Motion for Summary Judgment until the Court rules on Defendant's Motion to Strike.

## II.    FACTUAL BACKGROUND.

We briefly state the factual background based on the undisputed evidence and on the disputed evidence viewed in the light most favorable to Plaintiff. *See Bielich v. Johnson & Johnson, Inc.*, –F.Supp.2d–, 2014 WL 1117939, *1 (citation omitted); *Bender v. Norfolk Southern Corp.*, 994 F.Supp.2d 593, 603 n. 2 (M.D.Pa. 2014)(citation omitted).   We also note that Defendant correctly points out that only facts supported by citation to the record should be considered and that any unsupported denials by the nonmoving party with respect to moving party's statement of material facts *sans* citations to the record should be deemed admitted under Local Rule 56.1, M.D.Pa.  *See Bender v. Norfolk Southern Corp.*, 994 F.Supp.2d 593, 603 n. 2.

Plaintiff began working for Defendant on February 28, 2005, as a Tray Packer at its Hummel's Wharf location.[2]  Plaintiff worked various positions for Defendant and her last position was a Tray Packer.  Plaintiff worked side-by-side with other Tray Packers on a production line. As a Tray Packer, Plaintiff continuously stood with her stomach up against a metal table containing a work area and conveyor belts.  Plaintiff had to grab a Styrofoam tray from above the packing lines, and  put meat on the tray as the meat came down a conveyor belt in front of her.  Plaintiff was then required to put the meat filled tray on a different conveyor belt where it would be eventually

---

[2]For present purposes in considering only Defendant's **Doc. 44** Motion to Strike, we do not repeat the citations to the record regarding the factual background of this case.  We note that the documents filed by the parties with respect to Defendant's Motion for Summary Judgment cite to the record for above stated facts.

packaged.

Plaintiff had an extensive history of back problems, including degenerative disc disease, and received medical treatment, including physical therapy and prescriptions for Vicodin, Mirapex, Prednisone and Flexeril. Plaintiff's back pain continued during her employment with Defendant. Plaintiff's lower back pain radiated down her left leg and caused pain in her leg. Plaintiff's medical treatment and diagnostic tests for her back pain and leg pain continued from 2005 through 2011. Plaintiff had epidural steroid injections in July and August 2010. Plaintiff had back surgery performed by Dr. Rajjoub in the nature of a lumbar laminectomy with discectomy L5-S1 on December 16, 2011. Plaintiff obtained Defendant's approval of her request for time off from work due to her back surgery. Dr. Rajjoub advised Defendant *via* a note on December 20, 2011, that Plaintiff had surgery and would be off of work for 4-6 weeks.

Plaintiff tried to return to work in her Tray Packer position with Defendant on February 20, 2012, with a note from Dr. Rajjoub releasing her to work, but she was not allowed to return to work. Pursuant to requests from Defendant regarding Plaintiff's functional capacity, Plaintiff tried to return to work on February 23, 2012, with a note from Dr. Companion indicating that she would need to able to sit occasionally at her discretion while working during the day to decrease her back discomfort. Defendant refused to allow Plaintiff to sit during her job as a Tray Packer. Thus, Plaintiff was not allowed to do her Tray Packer job with Defendant after her surgery since Defendant medically disqualified her from the position.

The parties dispute whether Plaintiff's back condition constituted a disability for purposes

of the ADA.[3]   The parties dispute whether Plaintiff's request to be able to sit at times while working

her job as a Tray Packer for Defendant was a reasonable accommodation or whether the Tray

Packer job could not be performed from a seated position since the employee would not be able

to reach and grab empty trays and, reach to place filled trays of meat on the outgoing conveyor belt.

The parties also dispute whether Plaintiff would be able to perform the essential functions of her

job as a Tray Packer for Defendant if she was permitted to occasionally sit.   Defendant contends

that Plaintiff's inability to stand at all times while she was working rendered her unqualified to

perform the essential functions of the Tray Packer job in a safe manner.   The parities basically

disagree as to whether continuous standing is an essential function of the Tray Packer job and

---

[3]The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).   Thus, "[t]he ADA prohibits covered employers from discriminating against disabled individuals.  42 U.S.C. § 12112(a)." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

> To establish a prima facie discrimination case under the ADA, a plaintiff must prove: (1) that he or she has a disability within the meaning of the ADA; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination. *Id*.

"An individual is disabled if he had 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.' 42 U.S.C. § 12102(2)." *Sulima v. Tobyhanna Army Depot*, 602 F.3d at 185.

whether allowing Plaintiff to sit at her discretion was a reasonable accommodation.

Further, the parties dispute whether Plaintiff has produced evidence from which a reasonable jury could conclude that she is substantially limited in major life activities, namely, to walk and sleep. Plaintiff has produced substantial medical evidence to try and create genuine issues of fact with respect to whether she was disabled when she was removed from her Tray Packer job by Defendant. Plaintiff has also submitted evidence to try and show that while she performed daily activities and chores, before and after her surgery, she struggled to complete them and endured pain. Plaintiff contends that her medical records show she was continuously treated for her symptoms from 2005 through the commencement of this action, including low back pain and bilateral leg pain, and that her treatment continued during her tenure with Defendant. Plaintiff also contends that her evidence indicates that she was restricted as to her need to sit occasionally during the work day at her discretion and no time limit as to this restriction was given. Part of Plaintiff's evidence includes the Expert Reports of Rappucci and Dr. Glass.

Plaintiff claims that Defendant discriminated against her due to her back disability by not allowing her to return to work after her surgery and that Defendant refused to grant her reasonable accommodation for her disability. Defendant argues that Plaintiff did not have a disability and that Plaintiff's requested accommodation which would allow her to sit occasionally during the work day at her discretion was unreasonable and would remove essential functions of the Tray Packer job. Defendant also maintains that Plaintiff's requested accommodation would cause a safety hazard to Plaintiff and her co-workers. Further, Defendant contends that Plaintiff failed to engage in the interactive process.

### III.     MOTION TO STRIKE STANDARD.

As mentioned, Defendant filed a Motion to Strike the Expert Reports of Rappucci and  Dr. Jon Glass  which Plaintiff submitted, Doc. 36, Exs. C & I, respectively, and argues that the Court should not consider these Reports with respect to its Summary Judgment Motion.  (Doc. 44).  Also, as mentioned, we find that Defendant's Motion to Strike must first be resolved to clarify what evidence in the record should be considered before its Motion for Summary Judgment can be decided.

The Court in *Bender v. Norfolk Southern Corp.*, 994 F.Supp.2d at  599, stated the following standard for considering a Motion to Strike:

> Either party may challenge the admissibility of evidence used to support a motion for summary judgment. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Rule 56(c)(2) provides, in pertinent part, that "[a] party may object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2) (emphasis supplied). Thus, when the admissibility of evidence is challenged, the party relying on the evidence must demonstrate that such evidence is *capable* of admission at trial before it can be considered by the court on summary judgment. However, this requirement does
>
> > not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously Rule 56 does not require the nonmoving party to depose her own witnesses. [Rule 56] permits a proper summary judgment motion to be opposed by any materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing ... that specific facts show there is a genuine issue for trial[ ].
>
> *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *see also Lin v. Rohm & Haas Co.,* 293 F.Supp.2d 505, 511 (E.D.Pa.2003). Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial. *See* Fed.R.Civ.P. 56(c)(2).

Accordingly, the party offering the evidence must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment. *See Robinson v. Hartzell Propeller, Inc.,* 326 F.Supp.2d 631, 643 (E.D.Pa.2004).

## IV.   DISCUSSION.

As stated, this Court has jurisdiction over Plaintiff's ADA claim against Defendant company under 28 U.S.C. §1331.[4]  *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004);  *Reilly v. Lehigh Valley Hosp.*, 2012 WL 895459, *4 (E.D. Pa. March 15, 2012).

Defendant filed a Motion to Strike the Expert Reports of Rappucci and  Dr. Jon Glass  which Plaintiff submitted.  **(Doc. 44).**  We now consider this Motion.

The Expert Reports of Rappucci and  Dr. Jon Glass  which Plaintiff submitted are found at Doc. 36, Exs. C & I, respectively.  The Expert Report of Rappucci is dated March 28, 2014, and the Expert Report of Dr. Jon Glass is dated March 26, 2014.[5]  Dr. Glass also submitted a Supplemental Report dated May 15, 2014, which addresses, in part, Rappucci's Report and the Report of Defendant's Expert, Dr. Fernandez. (Doc. 49-1). Defendant argues that Plaintiff's two stated Expert

---

[4]We note that "the ADA has not been interpreted to permit individual liability." *See Mathews v. Hermann,* 2008 WL 1914781, *12 (E.D. Pa. April 30, 2008)(citing *Emerson v. Thiel College,* 296 F. 3d 184, 189 (3d Cir. 2002)("individuals are not liable under Titles I and II of the ADA.").

[5]We do not repeat herein all of the specific opinions stated in the Expert Reports of Rappucci and Dr. Jon Glass. The Reports speak for themselves and the briefs of the parties adequately address the contested portions.

Reports are unreliable, unhelpful and assert legal conclusions. We first address Rappucci's Report.

Rappucci, a vocational rehabilitation specialist, opines that the use of a sitting device, such as chair or an adjustable "Sit/Stand Stool," by Plaintiff to perform the essential functions of the Tray Packer job is a reasonable accommodation, does not pose a safety threat, and that Defendant did not engage in the interactive process with Plaintiff.   Defendant argues that these opinions of Rappucci do not constitute proper expert testimony, are not reliable  and, should be striken from the record.  Defendant also contends that Rappucci did not observe the work conditions of Tray Packers at its facility when he visited the site  as they existed in February 2012, when Plaintiff tried to return to work and, that he did not conduct examinations of the work area and obtain measurements and data necessary to determine the feasability of allowing Plaintiff to use a Sit/Stand Stool.  Thus, Defendant argues that since Rappucci did not base his opinions on any methodology, on any scientific basis, and on any personal knowledge the court should exclude them.   Defendant also argue that Rappucci's opinions are merely his subjective beliefs and unsupported speculations, and that they would not be helpful to the jury. Further, Defendant maintains that Rappucci's opinions contain legal conclusions that should be excluded.

We agree with Plaintiff that Rappucci's Expert Report should not be entirely excluded. (*See* Doc. 49, pp. 5- 13). However, we agree with Defendant that to the extent Rappucci states opinions as to whether Defendant has complied with the law, his testimony should be excluded.

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education, may testify in the form
> of an opinion or otherwise, if: (a) the expert's scientific,
> technical, or other specialized knowledge will help the trier

of fact to understand the evidence or to determine a cat in issue;
(b) the testimony is based upon sufficient facts or data;
(c) the testimony is the product of reliable
principles and methods; and (d) the expert has reliably applied
the principles and methods to the facts of the case.

As the Third Circuit stated in *Walker v. Gordon*, 2002 WL 31059157 **2 (3d Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*.[6] *See Kumho Tire [v. Carmichael]*, 526 U.S. [137] at 152-53 [(1999)]." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.' *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. These gatekeeping requirements have been extended to apply to all expert testimony. *See Kumho Tire*, 526 U.S. at 147." *Id*.

Further, the *Walker* Court stated:

> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert*, 509 U.S. at 590). In other words, the expert must have "good grounds" for his belief. *Id*. at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

*Id*. at **3.

---

[6]*See Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993).

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements.  The *Walker* Court explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein.  To the contrary, the role of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact.  *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] **Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury.**  *Cf. Breidor v. Sears, Roebuck and Co.,* 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

*Id.*(emphasis added).

Rule 702 has "a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)(citation omitted).

We agree with Plaintiff *(Id.,* pp. 5-6) with respect to Defendant's first argument, namely, that Rappucci's Expert Report is reliable.  As Plaintiff states, "Mr. Rappucci observed the actual job and actual facility where [Plaintiff] worked.  Mr. Rappucci interviewed [Plaintiff] contemporaneously with his review and read all of the depositions of [Defendant's] witnesses."   Further, as Plaintiff states, Rappucci "personally viewed [Plaintiff's] job responsibilities and job environment, as well as

the entire factual record as related to [Plaintiff's] medical condition and the interactions between [Plaintiff and Defendant], Mr. Rappucci acquired sufficient data and personal knowledge upon which to base his expert opinions, both with respect to the reasonableness of the potential accommodations and as to the appropriateness of the interactive process." *(Id.,* pp. 6-7).

Also, as Plaintiff points out, Rappucci, as a Disability Analyst/Rehabilitation Counselor with over 40 years vocational and rehabilitation experience is well qualified to offer his stated opinions.

We also agree with Plaintiff that Rappucci's testimony, as a vocational rehabilitation specialist,  will help the jury better understand the component physical parts of Plaintiff 's Tray Packer job, and in analyzing her essential job functions as well as identifying possible accommodations for Plaintiff due to her back condition.  In fact, Plaintiff cites two cases in which Rappucci's Reports were considered by the court with respect to similar opinions he has rendered in the instant case. *(Id.,* pp. 8-9).  We do not repeat the cites herein.   We do however agree with Defendant that simply because Rappucci's Reports were considered by other courts in other cases does not necessarily mean this Court should consider his opinions in the instant case.  Rather, we analyze Rappucci's Report and his opinions regarding the present case according to the stated rules of evidence and case law.

In the case of *In re Flonase Antitrust Litigation,* 884 F.Supp.2d 184, 190 (E.D. Pa. 2012), the Court stated:

> For an expert's testimony to be reliable, it "must be based on [] methods and procedures ... rather than subjective belief or speculation."  "[T]he admissibility inquiry thus focuses on principles and methodology, not on conclusions generated by principles and methodology."  Furthermore, an "expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury."

(Internal citations omitted).

The Court stated in *Martin v. Yellow Trans., Inc.*, 2006 WL 494880, *2 (E.D. Pa. 2006):

> Expert testimony that meets the qualification and reliability requirements is admissible "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" Fed.R.Evid. 702.  In other words, a witness' testimony meets the "fit" prerequisite if his opinions present relevant evidence that helps the factfinder.  *See Oddi*, 234 F.3d at 145 (*citing Daubert*, 509 U.S. at 591-92; *Paoli II*, 35 F.3d at 743).

*See also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cr. 2003)(citations omitted)(Three requirements an expert must satisfy: "qualification, reliability and fit."); *In re Flonase Antitrust Litigation,* 884 F.Supp.2d at 190("Rule 702 requires that the expert testimony fit the issues in the case [*i.e.*, relevant and assist the trier of fact."])(citation omitted).

Based on the filings of the parties, we find that Rappucci's proffered testimony and Report satisfy the above stated qualification, reliability and fit requirements.  Plaintiff has thoroughly stated Rappucci's qualifications, and we will not repeat all of them.  We also find that based on Rappucci's undisputed 40 plus years experience as well as "numerous licenses and certifications related to disability analysis and management, rehabilitation counseling and case management and ergonomics" his observations and opinions present relevant evidence that helps the factfinder. As Plaintiff correctly states, "Mr. Rappucci's report and opinions are based upon his familiarity with the entire record surrounding [Plaintiff's] case, his on-site inspection of [Defendant's] facility, his forty year career as a vocational rehabilitation specialist, his knowledge of the ADA, and his reliance upon the guidance of technical manuals and publications with returning people to work within the parameters of the ADA." *(Id.,* p. 9).

Thus, we agree with Plaintiff and find that Rappucci's Report and testimony will assist the jury in understanding the evidence to be presented at trial and in determining facts that will be in issue at trial.  Defendant can certainly present testimony of its employees and its experts about the stated issues.[7]  While Defendant's witnesses may provide the jury with factual information required to determine the relevant issues, we also find that Rappucci's testimony will help the jury in understanding the evidence and in deciding facts regarding the stated issues.  We find that the jury will be assisted by Rappucci's testimony and Report with respect to its ability to understand the evidence, decide factual issues, and with respect to the jury's determination as to whether the ADA was violated.  Thus, we agree with Plaintiff that, based on Rappucci's vast experience, he has specialized knowledge as a vocational rehabilitation specialist that will assist the jury in determining the issues in this case.

We also agree with Plaintiff that Rappucci's opinions are, for the most part, not improper legal conclusions.  *(Id.,* pp. 10-13). Plaintiff states "that opinion testimony that includes a legal conclusion is admissible where it helps the jury to understand the meaning of applicable legal standards and to resolve the factual issues in the case." *(Id.,* p. 10).  Defendant states that Plaintiff fails to support her assertion.  In any event, we discuss the applicable case law as to improper legal conclusions of an expert.

In the case of *Hartle v. FisrtEnergy Generation Corp.*, 2014 WL 1117930, *2 (W.D.Pa. March 20, 2014). , the Court stated:

---

[7]Specifically, Defendant can use its expert, Dr. Fernandez, to challenge Rappucci's report and testimony.

Expert testimony concerning the customs and practices of a particular industry is admissible as long as the expert does not give an opinion as to what is required under the law or whether a party has complied with the law.   Background information about a statute or regulation may be helpful to the jury.

(Internal citations omitted).   However, the expert's testimony cannot "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *Id*.(citation omitted).

Rappucci's Report contains the foundation for his findings as well as an analysis of Plaintiff's work for Defendant as a Tray Packer and Plaintiff's medical records and, based on his undisputed background and extensive experience, he clearly has the qualifications to testify about Plaintiff's ability to perform the essential functions of her job with and without accommodation.  Rappucci's Report, while containing legal conclusions, mostly contains opinions based on factual analysis of a well experienced  vocational rehabilitation specialist who regularly relies on the relevant portions of the ADA in his job.  We agree with Plaintiff that Rappucci's Report insofar as it provides relevant background of the ADA or any federal regulations as well as EEOC decisions may be helpful to the jury as to whether the ADA was violated.   However, we agree with Defendant that to the extent Rappucci's Report offers opinions that Defendant did or did not violate the ADA or any federal regulations or EEOC decisions, these opinions should be excluded.  *See Hartle v. FisrtEnergy Generation Corp*., 2014 WL 1117930, *3("such testimony would infringe upon the court's duty to explain the law to the jury and the jury's duty to determine the facts.").   We do not find that all of Rappucci's opinions in his Report are "just an application of the law to the facts of the case" and that all of his opinions "should be excluded" as Defendant contends.  (Doc. 53, pp. 8-10).

Thus, we shall recommend that only to the extent Rappucci's Report offers opinions that

Defendant did or did not violate the ADA or any federal regulations or EEOC decisions, these opinions should be excluded. *See Hartle v. FisrtEnergy Generation Corp.*, 2014 WL 1117930, *2(holding that expert cannot give an opinion as to what is required under the law or whether Defendant has complied with the law).

Further, as the Court in *Walker* stated, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F. 3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."). 2002 WL 31059157 at **3. "In determining the reliability of expert testimony, the standard is lower than one of correctness, and need not be right, only based on good grounds." *In re Flonase Antitrust Litigation,* 884 F.Supp.2d at 201(citation omitted); *Hartle v. FisrtEnergy Generation Corp.*, –F.Supp.2d–, 2014 WL 1007294, *3 (W.D.Pa. March 17, 2014).

As discussed above, we agree with Plaintiff that Rappucci's testimony is reliable and very relevant in this case. We find that Rappucci should be allowed to testify about the stated issues and render his mentioned opinions in this case. We find that his testimony is relevant to the jury's determination in this case with respect to Plaintiff's ADA claim against Defendant, and that it will aid the jury in resolving the factual disputes in this case. However, as discussed, to the extent Rappucci states an opinion as to whether Defendant has complied with the law, we find that Rappucci's testimony should be excluded.

As such, we will recommend that Defendant's Motion to Strike as it pertains to Rappucci's

17

Report be granted, in part, and denied, in part.  We will also recommend that the Court allow

consideration of Rappucci's Report, except to the extent Rappucci states an opinion as to whether

Defendant has complied with the law, for purposes of Defendant's Summary Judgment Motion.

We next consider Defendant's Motion to Strike as it pertains to Dr. Glass' Report.

In *Keller v. Feasterville Family Health Care Center,* 557 F. Supp. 2d 671, 675 (E.D. Pa. 2008),

the Court stated:

> "an expert's testimony is admissible so long as the process or technique
> used in formulating the opinion is reliable," *Pineda,* 520 F.3d at 247 (citing
> *Paoli II,* 35 F.3d at 742), and the expert's principles and methods are
> reliably applied to the facts of the case, Fed.R.Evid. 702 (advisory
> committee notes). The "expert's opinions must be based on the methods
> and procedures of science, rather than on subjective belief or unsupported
> speculation." *Paoli II,* 35 F.3d at 742 (citations and internal quotations omitted).
> Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting
> *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

"In addition to the 'good grounds' requirement, ... , state rules on the degree of certainty

required of an expert's opinion apply.  In Pennsylvania, a doctor can [offer] an opinion [only] if he

or she can do so with a reasonable degree of medical certainty.  *Heller,* 167 F.3d at 153 n. 4 (citing

*Paoli II,* 35 F.3d at 750-52)." *Id.* at 676.

Defendant concedes for present purposes of its Motion to Strike, the Dr. Glass is qualified,

but argues that his Report should be excluded since it is not reliable.  Plaintiff proffers Dr. Glass'

Report to show that she could perform the essential duties of her Tray Packer position despite her

back condition using a device to sit on at her discretion during her work time.  Defendant states

that Dr. Glass "does not provide any scientific method or procedures forming the basis for his

opinions" and that he "does not state how he came to his conclusions, other than reviewing 'the

provided documentation.'" (Doc. 45, pp. 13-14).  Specifically, Defendant states that Dr. Glass'

Report fails to explain his method for determining that if Plaintiff was allowed to sit down while

packing trays when needed, this would not affect the essential functions of her job.  Defendant

contends that Dr. Glass fails to cite any measurements of Plaintiff's work area and of the sitting

device, and fails to indicate how Plaintiff would be able to reach the tray packing area from a sitting

device.  Defendant also states that Dr. Glass does not have any documents as to the speed of the

conveyor belts Defendant used regarding his stated opinion.

Thus, Defendant concludes that Dr. Glass' "opinion lacks any basis in scientific or advanced

knowledge at all and is unreliable" and that his Report "appears to just be his personal opinion

based on his subjective analysis."  Further, Defendant maintains that Dr. Glass' opinion that Plaintiff

could "perform the essential functions of her job with reasonable accommodation" if she is allowed

to use an adjustable sit/stand stool and to sit on an as needed basis is a legal conclusion that should

be excluded.[8]  (*Id.,* pp. 14-15).

Initially, we agree with Plaintiff that "Dr. Glass, a Board certified neurologist, is

unquestionably qualified to opine on [her] medical condition."  We also agree with Plaintiff that in

light of Dr. Glass' May 15, 2014 Supplemental Report (Doc. 49-1), in which Dr. Glass states that

he reviewed the Expert Reports of Rappucci and Dr. Fernandez (Defendant's expert) which contain

---

[8]We note that for purposes of the present R&R pertaining only to Defendant's Motion to
Strike, we do not discuss the opinion of Dr. Glass that Plaintiff's back condition substantially
limited her in major life activities and, we do not discuss whether Plaintiff was disabled under
the ADA.

the relevant information, measurements and documentation, Defendant's contention that Dr. Glass' first Report was unreliable has now been addressed and the deficiencies have been cured. (Doc. 49, pp. 13-14).   While Defendant argues that Dr. Glass' May 15, 2014 Supplemental Report is still unreliable and fails to provide an explanation of any methodology and fails to state how he came to his conclusion, we find that Defendant can raise these issues during cross-examination of Dr. Glass.   (Doc. 53, pp. 10-11).   We also disagree with Defendant and find that the Reports of Dr. Glass would be helpful to the trier of fact and that the Supplemental Report of Dr. Glass sufficiently states the grounds for his opinions. Further, we do not find that Dr. Glass' opinions are impermissible legal conclusions. Additionally, Dr. Glass states in his Supplemental Report that his opinions are made to a reasonable degree of medical certainty. (*See* Doc. 49-1).

Thus, we will recommend that Defendant's Motion to Strike the Reports of Dr. Glass be denied.   We will also recommend that the Court allow consideration of Dr. Glass' Reports for purposes of Defendant's Summary Judgment Motion.

## V.   RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Strike **(Doc. 44)** as it pertains to Rappucci's Report be granted, in part, and denied, in part.   It is recommended that the Court exclude Rappucci's Report only to the extent it states opinions as to whether Defendant has complied with the law.   Further, it is recommend that Defendant's Motion to Strike the Reports of Dr. Glass be denied.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 8, 2014**

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CANDY S. ORNER,                    :          CIVIL ACTION NO. **4:CV-13-0837**
                                   :
              Plaintiff            :
                                   :          (Judge Brann)
       v.                          :
                                   :          (Magistrate Judge Blewitt)
NATIONAL BEEF PACKAGING,           :
COMPANY, LLC,                      :
                                   :
                                   :
              Defendant            :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 8, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely Objections to the foregoing Report and Recommendation, may

constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 8, 2014**