## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANDY S. ORNER, | : | CIVIL NO. 4:13-CV-837 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Brann)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| NATIONAL BEEF PACKAGING, | : | |
| COMPANY, LLC, | : | |
| | : | |
| | : | |
| **Defendant** | : | |

### REPORT AND RECOMMENDATION

I.    **Statement of Facts and of the Case**

A.    **Procedural History**

On April 2, 2013, the plaintiff, Candy S. Orner, filed a complaint against the defendant National Beef Packaging Company, LLC, stating a claim for "Discrimination and Failure to Provide Reasonable Accommodation Pursuant to the American with Disabilities Act." (Doc. 1.)  Thus, the plaintiff's cause of action in this lawsuit is a claim under the American with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq.*  The plaintiff avers that she is disabled for purposes of the ADA, that the defendant was aware of her disability,

and that the defendant repeatedly denied her requests for reasonable accommodation to return to work.

This case now comes before us for consideration of a motion for summary judgment filed by the defendant. (Doc. 26.)[1]  This motion for summary judgment

_____

[1]We note that this motion has, itself, inspired collateral disputes between the parties.  Thus, along with this motion the defendant also filed a Statement of Material Facts ("SMF") with exhibits. (Docs. 26-2 & 26-3 to 26-20.)  Also, on April 14, 2014, the defendant filed its support brief with four exhibits under seal. (Docs. 27 to 31.)  On May 5, 2014, the plaintiff filed her opposition brief to the defendant's motion for summary judgment as well as her answer to the defendant's SMF with exhibits. (Docs. 35 & 36-1 to 36-13.)  The plaintiff also filed her medical records under seal. (Docs. 38 & 38-1.)  On May 30, 2014, the defendant filed a reply brief with respect to its motion for summary judgment with an attachment, namely, a May 29, 2014, declaration of defendant's engineer expert witness, Jeffrey E. Fernandez, PhD., PE, CPE, verifying the facts and opinions in his April 14, 2014, expert report. (Docs. 46 & 46-1.)  Dr. Fernandez's April 14, 2014, expert report is found at Doc. 26-4, pp. 10 - 72.  After granting the plaintiff leave of court to file a sur-reply brief, the plaintiff filed her sur-reply brief in opposition to the defendant's motion for summary judgment on June 19, 2014. (Doc. 50.)  The plaintiff also filed her supplemental statement of material facts with exhibits. (Docs. 51 & 51-2 to 51-5.)  Both parties also attached unpublished opinions to their respective briefs.  On May 30, 2014, the defendant also filed a motion to strike two (2) exhibits filed by the plaintiff in her opposition to the defendant's motion for summary judgment, namely, Doc. 36, Ex. C, the expert report of Daniel Rappucci on behalf of the plaintiff, and the expert report of Dr. Jon Glass on behalf of the plaintiff, Doc. 36, Ex. I. (Doc. 44).  Further, on May 30, 2014, the defendant filed its brief in support of its motion to strike with two exhibits, the affidavit of Diane Peifer, Human Resource Manager for the defendant, and the May 29, 2014, declaration of Dr. Fernandez verifying the facts and opinions in his April 14, 2014, expert report submitted on behalf of the defendant. (Docs. 45 & 45-1 & 45-2.)  On June 12, 2014, the plaintiff filed her opposition brief to the defendant's motion to strike with an exhibit, a May 15, 2014 report of Dr. Jon Glass, neurologist, responding to Fernandez's supplemental report. (Doc. 49 & 49.)  On June 26, 2014, the defendant filed its reply brief in support of its motion to strike,

is now ripe for disposition.  Based on our discussion below, we agree with the

plaintiff that material issues of fact exist with respect to her claim under the ADA

against the defendant.  We find that the numerous exhibits submitted by the parties

create these disputed issues of material fact and that these disputes should be

resolved at trial.  Thus, we agree with the plaintiff that the defendant's motion for

summary judgment should be denied.

## B.    **Factual Background**

We state the contested factual background of this case based upon both the

undisputed evidence, and on the disputed evidence viewed in the light most

favorable to the plaintiff.  <u>See</u> <u>Bielich v. Johnson & Johnson, Inc.</u>, –F.Supp.2d–,

2014 WL 1117939, *1 (citation omitted); <u>Bender v. Norfolk Southern Corp.</u>, 994

F.Supp.2d 593, 603 n. 2 (M.D.Pa. 2014)(citation omitted).  We also note that only

facts supported by citation to the record will be considered and that any

unsupported denials by the plaintiff of the defendant's statement of material facts

---

(Doc. 53.)  On October 8, 2014, Judge Blewitt filed a Report and Recommendation recommending that the Court exclude Dr. Rappucci's report only to the extent it states opinions as to whether the defendant has complied with the law.  Judge Blewitt further recommended that the defendant's motion to strike the reports of Dr. Glass be denied.  (Doc. 55.)  On December 9, 2014, the Court adopted Judge Blewitt's Report and Recommendation.  (Doc. 58.)

*sans* citations to the record will be deemed admitted under Local Rule 56.1, M.D.Pa. <u>See</u> <u>Bender v. Norfolk Southern Corp.</u>, 994 F.Supp.2d 593, 603 n. 2.

The plaintiff began working for the defendant on February 28, 2005, as a Tray Packer at its Hummel's Wharf location. The plaintiff worked various positions for the defendant and her last position was a Tray Packer. The plaintiff worked side-by-side with other Tray Packers on a production line. As a Tray Packer, the plaintiff was required to continuously stand with her stomach up against a metal table containing a work area and conveyor belts. The plaintiff had to grab a Styrofoam tray from above the packing lines, and put meat on the tray as the meat came down a conveyor belt in front of her. The plaintiff was then required to put the meat filled tray on a different conveyor belt where it would be eventually packaged.

The plaintiff had a history of back problems, including degenerative disc disease, and received medical treatment, including physical therapy and prescriptions for Vicodin, Mirapex, Prednisone and Flexeril, for her continuing back pain during her employment with the defendant. The plaintiff's lower back pain radiated down her left leg and caused pain in her leg. The plaintiff's medical treatment and diagnostic tests for her back pain and leg pain continued from 2005 through 2011. The plaintiff had epidural steroid injections in July and August

2010.  The plaintiff had back surgery performed by Dr. Rajjoub in the nature of a lumbar laminectomy with discectomy L5-S1 on December 16, 2011.  The plaintiff obtained the defendant's approval of her request for time off from work due to her back surgery.  Dr. Rajjoub advised the defendant *via* a note on December 20, 2011, that the plaintiff had surgery and would be off of work for 4-6 weeks.

The plaintiff tried to return to work in her Tray Packer position with the defendant on February 20, 2012, with a note from Dr. Rajjoub releasing her to work, but she was not allowed to return to work.  Pursuant to requests from the defendant regarding the plaintiff's functional capacity, the plaintiff tried to return to work on February 23, 2012, with a note from Dr. Companion indicating that she would need to able to sit occasionally at her discretion while working during the day to decrease her back discomfort.  The defendant refused to allow the plaintiff to sit during her job as a Tray Packer.  Thus, the plaintiff was not allowed to do her Tray Packer job with the defendant after her surgery since the defendant medically disqualified her from the position.

The parties' pleadings relating to this summary judgment motion reveal that this case is replete with essentially factual controversies.  As a threshold matter, the parties dispute whether the plaintiff's back condition constituted a disability

for purposes of the ADA.  The parties further dispute whether the plaintiff's request to be able to sit at times while working her job as a Tray Packer for the defendant was a reasonable accommodation or whether the Tray Packer job could not be performed from a seated position since the employee would not be able to reach and grab empty trays and, reach to place filled trays of meat on the outgoing conveyor belt.  The parties also dispute whether the plaintiff would be able to perform the essential functions of her job as a Tray Packer for the defendant if she was permitted to occasionally sit.  In this regard, the defendant contends that the plaintiff's inability to stand at all times while she was working rendered her unqualified to perform the essential functions of the Tray Packer job in a safe manner.  The parties do not agree as to whether continuous standing is an essential function of the Tray Packer job.

Further, the parties dispute whether the plaintiff has produced evidence from which a reasonable jury could conclude that she is substantially limited in major life activities.  With respect to this issue, we agree with the plaintiff that she has produced sufficient evidence to create genuine issues of fact with respect to whether she was disabled when she was removed from her Tray Packer job by the defendant.  We also agree with the plaintiff that she submitted adequate evidence to show that while she performed daily activities and chores, before and after her

surgery, she struggled to complete them and endured pain.  The voluminous medical records the plaintiff submitted shows that she was continuously treated for her symptoms from 2005 through the commencement of this action, including low back pain and bilateral leg pain, and that her treatment continued during her tenure with the defendant.  The plaintiff  was also restricted as to her need to sit occasionally during the work day at her discretion and no time limit as to this restriction was given.

We note that this threshold factual dispute regarding the extent of Orner's impairment, in turn, appears to have inspired other fact-bound disagreements between the parties relating to other aspects of the plaintiff's ADA claim.  As discussed, the plaintiff argues that the defendant discriminated against her due to her back disability by not allowing her to return to work after her surgery and that the defendant refused to grant her reasonable accommodation for her disability.  Because the defendant argues that the plaintiff did not have a disability, it contends that the plaintiff's requested accommodation which would allow her to sit occasionally during the work day at her discretion was unreasonable and would remove essential functions of the Tray Packer job.  The defendant also maintains that the plaintiff's requested  accommodation would cause a safety hazard to the plaintiff and her co-workers.  Thus, the question of what would have constituted

a reasonable accommodation of this alleged disability seems on this record to be inextricably intertwined with the parties' factual dispute regard the nature, extent, severity and potentially disabling impact of Orner's physical impairment.

Finally, both the defendant and the plaintiff contend that the other party failed to engage in a meaningful interactive process to have the plaintiff return to work. This disagreement also stems from, an seems closely linked to, the parties contrasting views regarding the nature of Orner's impairments. Thus, in our view these cascading, and interlocking factual disputes ultimately define the contours of the controversy between the parties.

## II.   Discussion

### A.   Summary Judgment– Standard of Review

The defendant has moved for summary judgment. Rule 56 (c) of the Federal Rules of Civil Procedure, provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate only when: (1) there are no material facts in dispute; and (2) one party is entitled to judgment as a matter of law. See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir.1990).

A district court may properly grant a motion for summary judgment when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "Material facts" are those which might affect the outcome of the suit.  Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.1996) (citations omitted).  To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show " 'that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.' "  Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir.1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir.1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  More simply put, a party moving for

summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim.  <u>Country Floors, Inc. v. Partnership Composed of Gepner and Ford</u>, 930 F.2d 1056, 1061 (3d Cir.1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains.  <u>Matushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  <u>Celotex</u>, 477 U.S. at 32; <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir.1999).

## B.   <u>Claims</u>

As stated, this Court has jurisdiction over plaintiff's ADA claim against defendant under 28 U.S.C. §1331.[2]  <u>See</u> <u>Williams v. Phila. Hous. Auth. Police</u>

---

[2]We note that "the ADA has not been interpreted to permit individual liability." <u>See</u> <u>Mathews v. Hermann</u>, 2008 WL 1914781, *12 (E.D. Pa. April 30, 2008)(citing <u>Emerson v. Thiel College</u>, 296 F. 3d 184, 189 (3d Cir. 2002)("individuals are not liable under Titles I and II of the ADA.").

Dep't, 380 F.3d 751, 761 (3d Cir. 2004); Reilly v. Lehigh Valley Hosp., 2012 WL

895459, *4 (E.D. Pa. March 15, 2012).

The ADA prohibits discrimination "against a qualified individual on the

basis of disability in regard to job application procedures, the hiring advancement,

or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Thus, "[t]he

ADA prohibits covered employers from discriminating against disabled

individuals.  42 U.S.C. § 12112(a)."  Sulima v. Tobyhanna Army Depot, 602 F.3d

177, 185 (3d Cir. 2010).

To establish a *prima facie* discrimination case under the ADA, a plaintiff

must prove:

> (1) that he or she has a disability within the meaning of the ADA; (2)
> that he or she is otherwise qualified to perform the essential
> functions of the job, with or without reasonable accommodations by
> the employer; and (3) that he or she has suffered an otherwise
> adverse employment decision as a result of discrimination.

Jamison v. Campbell Chain Cooper Tools, 2009 WL 4429733, at *3 (M.D. Pa.

Nov. 27, 2009) (internal quotation marks omitted) (quoting Williams v. Phila.

Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004)); Sulima v.

Tobyhanna Army Depot, 602 F.3d at 185(citation omitted); Reilly v. Lehigh

Valley Hosp., 2012 WL 895459, *4 (E.D. Pa. March 15, 2012) (citations omitted);

<u>Mathews v. Hermann</u>, 2008 WL 1914781, *12(citations omitted).  "An individual is disabled if [s]he had 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.'  42 U.S.C. § 12102(2)."  <u>Sulima v. Tobyhanna Army Depot</u>, 602 F.3d at 185.

A plaintiff can establish a disability in one of three ways.  <u>Jamison</u>, 2009 WL 4429733, at *4.  This Court held in <u>Jamison</u>:

> Plaintiffs can prove that (1) they have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or (2) they have a "record of such impairment;" or (3) they are "regarded as having such an impairment." 29 C.F.R. § 1630.2(g); 42 U.S.C. § 12102(1).

2009 WL 4429733, at *4.

The <u>Jamison</u> Court continued further:

> To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k).  To prove that she was "regarded as having" a disability, plaintiff can show any of the following:  (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constitution such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but she is "treated by [defendant] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*); <u>see also</u> <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 381 (3d Cir. 2002).  A plaintiff can make such a showing by demonstrating either that "despite having no impairment at all [defendant] erroneously believed that [plaintiff] had an impairment that substantially limited

12

one or more of her major life activities" or that she "had a non-
limiting impairment that [defendant] mistakenly believed
substantially limited on or more of her major life activities."
Eshelman v. Agere Sys., 554 F.3d 426, 434 (3d Cir. 2009).  The
court must focus on "the reactions and perceptions of the persons
interacting or working" with the plaintiff and not on the plaintiff's
"actual abilities."  Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d
Cir. 1996).

2009 WL 4429733, at *4 n.8 (alterations in original).

It is the plaintiff's position that she is disabled and the defendant was aware
of her disability.  When the plaintiff requested a reasonable accommodation to
return to work, her request was immediately denied.  The plaintiff further contends
that she made efforts to return to work, but was continually "rebuffed" by the
defendant.  Furthermore, the plaintiff states that the defendant failed to engage in
the interactive process as required by the ADA and failed to suggest alternate
accommodations even though similar accommodations had been provided to other
workers.  (See Doc. 35.)

The defendant argues that after the plaintiff's back surgery on December 16,
2011, she was cleared to work on February 21, 2012, by her family physician with
a note stating that "restrictions are to follow."  On February 23, 2012, the same
physician issued a note stating that she remained limited in her mobility and it was
necessary for her to use, "a device for her to work a portion of the day from the

seated position to decrease her discomfort." The defendant determined that it was not reasonable to put a chair in the Tray Packer production line. The defendant then attempted to obtain additional information from the plaintiff on at least three occasions regarding the specific restrictions and the information necessary for to evaluate her need for work accommodation and her ability to perform the essential duties of her job. The defendant further offered her physicians a site visit in order for them to evaluate her working conditions and to determine what reasonable accommodations she may need. After February 23, 2012, the plaintiff never contacted the defendant in order to attempt to return to work and she never provided the defendant with the requested information. (See Doc. 27.)

The ADA defines a "qualified individual with a disability" as

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires.

42 U.S.C. § 12111(8).

In order for a plaintiff to establish a discrimination claim under the ADA, she must, therefore, show that she was a "qualified individual with a disability" at the time the adverse employment actions were taken. Bjorklund v. Phila. Housing Auth., 118 Fed. Appx. 624, 625-626 (3d Cir. 2004). Plaintiff seeks retrospective relief since she requests compensatory damages, damages for failure

to provide reasonable accommodation, lost wages and raises, benefits, front pay, back pay, lost future earning capacity, liquidated damages for intentional willful, malicious, reckless, outrageous conduct, damages for emotional distress, punitive damages, reasonable attorneys fees and costs and pre and post judgment interest on delay damages. (Doc. 1, pp. 7-8). In order to maintain a claim for retrospective relief under the ADA for the defendant's allegedly discriminatory acts, the plaintiff must establish that she was a "qualified individual with a disability"during the applicable time. Felix v. N.Y. City Transit Auth., 154 F.Supp. 2d. 640, 652 (S.D. N.Y. 2001).

### C. Factual Disputes Relating to the Plaintiff's *Prima facie* Case and Other Elements of this Case Preclude Summary Judgment

As mentioned, plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) she has suffered an adverse employment decision as a result of discrimination. Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998)(citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)).

Under the ADA, as the Thompson Court stated, a person has a disability if:

The ADA defines the term "qualified person with a disability" as follows:

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12112(8). 42 U.S.C. § 12102(2) sets forth three possible definitions of disability for purposes of the ADA: "The term 'disability' means, with respect to an individual - - (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

371 F. Supp. 2d at 671-672 (Citation omitted).

The defendant argues that the plaintiff cannot maintain a claim for discrimination under the ADA because she has not established the first two prongs of a *prima facie* case of discrimination. According to the defendant, Orner cannot establish that she is disabled under the ADA or that she was able to perform the essential functions of her job with or without reasonable accommodation.

The plaintiff alleges that prior to her back surgery, she had lower back pain, her legs and feet were constantly tingling and she had severe pain in her back. (Doc. 35, p. 22.) Further, the plaintiff alleges that prior to her surgery, she was

16

having pain all the time and her legs and feet were numb.  (Id., pp. 22-23.)  In 2011, the plaintiff completed regular activities such as going out to eat, shopping, gardening, cleaning the house, vacuuming and mopping, but she was unable to do so without pain.  (Id., p. 23.)  The plaintiff notified the defendant that she was having surgery and that she would require time off from work and her understanding was that the request was approved.  (Id.)  The plaintiff underwent a lumbar laminectomy with discectomy L5-S1 surgical procedure on December 16, 2011, performed by Dr. Rajjoub.  (Id.)  Dr. Rajjoub provided the defendant with a note dated December 20, 2011, stating that she had the surgery and that she would be off work for 4-6 weeks.  (Id.)  The plaintiff was restricted from bending and twisting at the waist, lifting anything over a gallon of milk, sitting in a straight back chair and driving in vehicles for a long period of time.  (Id.)  Six weeks after the surgery, the plaintiff was examined by Dr. Rajjoub and reported low back pain that was worse when she was in any position for too long especially when riding a car and trouble sleeping at night.  (Id., pp. 23-24.)  The plaintiff's physical activity was reduced due to pain and she was advised to be careful lifting and bending.  (Id.)

The plaintiff was able to resume household chores, gardening and other activities, but had to take her time doing them.  The plaintiff testified that her back

affected her ability to step in and out of the shower, get out of bed, dress herself, put on sneakers or boots, sit for more than an hour and sleep, stand for more than two hours, stoop for five minutes, and walk for more than 500 feet at a time before needing to stop and rest.  (Id., p. 24.)

Timothy R. Safford, who lives with the plaintiff testified that her back condition affected her ability to lift items around the house, get dressed without help, get in and out of the car without assistance, stand for a long period of time and tend to her garden.  (Id.)  Mr. Safford further testified that the plaintiff's back pain affected her ability to get out of bed.  (Id.)

The plaintiff attended numerous post-operative follow-up procedures after her consultation with Dr. Rajjoub in which she was released to work on February 20, 2012.  (Id., p. 25.)  The plaintiff was concerned with lifting due to being advised that she would have to be careful in everything she does for life.  (Id.) The plaintiff further complained of pain in her lower back and neck and unrelenting headaches.  (Id., p. 26.)  Dr. Companion indicated that the plaintiff would function better with intermittent sitting at work.  (Id.)  Dr. Companion suggested writing a note indicating that if she needed to sit during the work day, she should be allowed.  (Id.)  Dr. Companion indicated that the sitting should be

at the discretion of the plaintiff.  The plaintiff continued on medication prescribed for her.

The plaintiff had further consultations regarding the headaches that she was suffering from.  (Id., p. 27.)  In April 2012, the plaintiff consulted with Family Medical Center, PC regarding a new onset of back pain with radiation down her right leg posteriorly to her heel.  (Id.)  The plaintiff sought a new excuse to return to work because the defendant rejected the prior doctor notes.  (Id., p. 28.)  The plaintiff continued to seek consultations and treatment including lumbar epidural injections for her lower back pain.  (Id., pp. 28-29.)  The plaintiff's headaches remained controlled with Amitriptyline, but the plaintiff complained of persistent back pain through August 20, 2013.  (Id., p. 29.)  The Court in Strayer v. New Enterprise Stone & Lime Co., Inc., 2006 WL 2773479, *4-*5 (W.D. Pa.), stated as follows:

> [P]laintiffs claiming a physical impairment under the ADA must demonstrate "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs; respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1).  The major life activities that the impairment must substantially limit are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).  Such an activity is "substantially limited" if the individual

is "[u]nable to perform a major life activity that the average person in the general population can perform," or if she is "[s]ignificantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(J)(1)(I)-(ii).  The following factors should be considered in determining whether an individual is substantially limited in a major life activity:  (I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(I)-(iii).

See also Sulima v. Tobyhanna Army Depot, 602 F.3d at 185.

The defendant draws different inferences from the evidence regarding the question of Orner's disability and contends that it is undisputed that the plaintiff underwent a lumbar laminectomy to relieve her back pain.  (Doc. 27, p. 34.)  It is further undisputed that her physician released her to work on February 20, 2012, without restrictions.  (Id., p. 35.)  The defendant argues that the evidence does not show that the plaintiff's back pain or back surgery qualifies as a disability and, the evidence does not show that the plaintiff was substantially limited in a major life activity and that the defendant refused to let her return to work.  (Id.)  The defendant points to the plaintiff's Complaint which states that her disability substantially limits her ability to perform major life activities, but contends that the plaintiff does not provide any evidence of those limitations.  (Id.).  The

defendant further point to the fact that the defendant worked as a Tray Packer and performed the essential functions of her job without any restrictions until December 16, 2011, when she had back surgery. (Id.)  The plaintiff regularly engaged in activities such as gardening, going out to eat, shopping, caring for herself and performing household chores. (Id.)  The plaintiff received physical therapy in 2009, approximately two years before her surgery and was not taking any prescription pain medication for her back.  Thus, the defendant states that there is no evidence that she was substantially limited in any major life activity prior to her surgery. (Id., p. 36.)  After the surgery, the plaintiff had immediate restrictions on her activities in order to allow her back to heal. (Id.)  The defendant argues that the restrictions are a temporary impairment and not a disability under the ADA. (Id.)  Additionally, the defendant points to the fact that the plaintiff was restricted from working 4-6 weeks after the surgery. (Id.)  Thereafter, she was released to work on February 20, 2012, without any restrictions. (Id.)  The defendant contends that she has not shown that she is "substantially limited" in a "major life activity." (Id.)

As the Strayer Court observed, "there is a difference between a disability and an impairment."  The Strayer Court further stated:

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky., Inc., 534 U.S. at 195, 122 S.Ct. at 690, 151 L.Ed.2d at 629. "To qualify as disabled, a claimant must further show that the limitation on the major life activity is "substantial." Id.

2006 WL 2773479, *5.

A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. Sutton v. United Air Lines, Inc., 527 U.S. at 482-83, 119 S. Ct. at 2146-47, 144 L.Ed.2d at 462 (1999).

A further principle guides us when considering this case, which comes before us in the context of a summary judgment motion. If the summary judgment record reveals a genuine dispute of material fact relating to the threshold question of whether the plaintiff is disabled, as that term is used in the ADA, then it is clear that a motion for summary judgment should be denied. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 764 (3d Cir. 2004). Viewing this case in the context of the pending motion for summary judgment, we believe that the

threshold question of the disabling effect of the plaintiff's impairments, which is hotly disputed by the parties, presents a contested issue of material facts which precludes summary judgment.  Here, we agree with the plaintiff that she has produced sufficient evidence to create genuine issues of fact with respect to whether she was disabled when she was removed from her Tray Packer job by the defendant.  We also agree with the plaintiff that she submitted adequate evidence to show that while she performed daily activities and chores, before and after her surgery, she struggled to complete them and endured pain.  The voluminous medical records the plaintiff submitted shows that she was continuously treated for her symptoms from 2005 through the commencement of this action, including low back pain and bilateral leg pain, and that her treatment continued during her tenure with the defendant.  The plaintiff  was also restricted as to her need to sit occasionally during the work day at her discretion and no time limit as to this restriction was given.

We also note that the fact that Orner's physical condition might improve over time does not necessarily preclude an ADA claim.  Indeed, courts have recognized that a temporary disability may still be actionable under the ADA in some circumstances and have held that: "[b]ecause an impairment and its impact may be less than permanent and still 'significantly restrict' a person's ability to

perform a class of jobs, [a lack of clarity on this factual issue] precludes summary judgment ." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 765 (3d Cir. 2004).

Thus, we find that there are disputed material facts showing the plaintiff establishing the first threshold of a *prima facie* ADA disability discrimination case, *i.e.*, she was an individual with a disability.  A reasonable jury could find that the defendant regarded the plaintiff as a qualified individual within the meaning of the ADA.  Thus, we will recommend that the Court deny the defendant's summary judgment motion with respect to the plaintiff's claim.

We further find that this initial threshold factual dispute, in turn, creates a cascading array of additional factual questions.  These additional, and essentially factual, questions concern both the reasonableness of any proffered accommodations to Orner's alleged impairments, and the nature, extent and degree of any meaningful interactive process needed to address these concerns.  Where such matters are also cast into dispute,"'[T]he question of whether a proposed accommodation is reasonable is a question of fact.' Buskirk, 307 F.3d at 170; see also Skerski, 257 F.3d at 286; cf. Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 671 (3d Cir.1999)."  Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004).

24

In sum, concluding that there exist a series of inextricably intertwined, and fundamentally factual, disputes in this case relating to the plaintiff's claimed disability, the reasonableness of any proposed accommodation to that claimed disability, and the type of interactive process engaged in by the parties it is recommended that the defendant's motion for summary judgment be denied. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004)(denying summary judgment on ADA claim where factual disputes existed regarding the nature of the disability and the reasonableness of proposed accommodations).

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion for Summary Judgment , (Doc. 26.) be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the

report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of February, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge